UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.

JAMES MELVIN

Case No. 2:26-CR-88-GSL-JEM

## OPINION AND ORDER

This matter is before the Court on Defendant James Melvin's Motion for Reconsideration of Order of Detention [DE 17], filed on October 5, 2026, which seeks a *de novo* review of the magistrate judge's detention order [DE 13]. That motion has been fully briefed [DE 17; DE 21–22], and a bond hearing was held on November 4, 2026, to discuss the motion [DE 24]. For the reasons stated on the record and further described below, the Court **DENIES** Defendant's motion [DE 17].

## BACKGROUND

On May 22, 2026, Defendant was charged with the following: two counts of distributing cocaine, a Schedule II substance, in violation of 21 U.S.C. § 841(a)(1); one count of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); one count of possessing a machinegun in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(ii); and one count of being a felon in possession of a firearm that was in and affecting commerce, in violation of 18 U.S.C. § 922(g)(1).

On August 20, 2026, Magistrate Judge Martin held an arraignment and detention hearing pursuant to 18 U.S.C. § 3142(f), [DE 12], after which Judge Martin entered a written order finding that the Government met its burden for detention and that there existed no condition or combination of conditions reasonably assuring the safety of the community from Defendant or

Defendant's appearance as required. [DE 13]. Specifically, Judge Martin determined that the Government established probable cause to believe that the defendant had committed an offense from which the statutory rebuttable presumption under 18 U.S.C. § 3142(e)(3) would apply, and further, that Defendant had not rebutted the presumption. [DE 13 at 3]. Judge Martin also made various findings supporting detention, including Defendant's previous drug-related felony convictions, his long history of selling drugs, his prior failure to appear in court, his prior violations of probation, the strength of the Government's evidence against Defendant, and that Defendant is facing a minimum mandatory sentence of thirty years to life on Count 4 of the Indictment. [*Id.* at 3–4]. Defendant has since been detained pending trial. On October 5, 2026, Defendant moved for a *de novo* review by the district judge and release on bond pending the disposition of this case. [DE 17].

**LEGAL STANDARD**

Under 18 U.S.C. § 3145(b), a defendant may move for revocation of a magistrate judge's detention order. The Court reviews a magistrate judge's detention ruling *de novo*. *See United States v. Wilks*, 15 F.4th 842, 847 (7th Cir. 2021). When conducting the review, the Court may "start from scratch" and hold a new hearing or review the record of the proceedings before the magistrate judge. *See United States v. Torres*, 928 F.2d 291, 292 (7th Cir. 1991).

When a defendant is charged with a criminal offense, they may be released on personal recognizance, temporarily detained, or detained. 18 U.S.C. § 3142(a). Detention is appropriate where there is no condition or combination of conditions that will reasonably assure the defendant's appearance in court and the safety of the community. *Id.* § (e)(1). In making a detention determination, the Court looks at the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

terrorism, or involves a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including

(A) the person's character , physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

(4) and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

*Id.* § (g).

While Congress has attempted to narrow the sets of offenses in which detention is ordered, certain offenses involving serious drug trafficking and felonies involving firearms have been targeted. *Id.* § (f)(1)(C), (E). These offenses carry a rebuttable presumption that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community. *Id.* § (e)(3)(B). The presumption shifts the burden of production to the defendant to come forward with some evidence that, if released, he would not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). The burden is not heavy, as any evidence favorable to a defendant that comes within a category listed under § 3142(g) will suffice. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Even if rebutted though, the presumption remains in the case as an evidentiary finding militating against release. *Id.* The government bears the ultimate burden of persuasion, *see Wilks*, 15 F.4th at 846–847; *Dominguez*, 783 F.2d at 706–07, and must prove danger by clear and convincing evidence and risk of flight by a preponderance of the evidence, *Portes*, 786 F.2d at 764–65.

## DISCUSSION

After conducting an independent review of the § 3142(g) factors, the pretrial bond report, the magistrate judge's detention order, and the arguments and evidence raised by the parties at the hearing and in their briefs, the Court is convinced that detention is appropriate here.

First, looking at the charged offenses, the parties agree and acknowledge that a rebuttable presumption arises under § 3142(e)(3). [DE 21 at 11; DE 22 at 2]. Defendant was charged with (1) an offense for which there is a maximum term of imprisonment of ten years or more as prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), and (2) an offense under 18 U.S.C. § 924(c). Specifically, the Government has presented covert photographic evidence taken during two controlled-buy transactions on June 20, 2024, and July 3, 2024, which depicts Defendant speaking with a government informant and handing the informant what was field tested to be 2.2 grams of cocaine. [*See* DE 24 (Gov. Exs. 1–3)]. Following the execution of a search warrant for Defendant's residence on July 16, 2024, from which identifying documentation belonging to Defendant was obtained, additional photographs were taken depicting 127.1 gross grams of cocaine seized from the residence, as well as a Glock 19 pistol located in the same room as the trafficked drugs that was equipped with an extended magazine containing thirty rounds of ammunition, a machine gun conversion device, and an obliterated serial number. [*Id.* (Gov. Exs. 4–5)]. Accordingly, the Court applies the statutory presumption and will now consider the Government's burden of proof as it pertains to whether Defendant is a danger to the community or a flight risk.

### I. Danger to the Community

Beginning with the danger to the community analysis, the Court is persuaded that the Government has met its burden of proof by clear and convincing evidence that no such condition

or combination of conditions exist that would reasonably ensure the safety of the community if Defendant was released.

*Nature and Circumstances of the Offense*

The first factor the Court must consider is the nature and circumstances of the charged offenses, including whether they are crimes of violence or crimes involving drugs or firearms. *See* § 3142(g)(1). Here, the nature of the charged offenses concern both drugs and firearms. Defendant has been charged with three counts of distributing and/or possessing with intent to distribute a detectable amount of cocaine, one count of possessing a machinegun in furtherance of drug trafficking, and one count of being a felon in possession. [*See* DE 1]. Not only do these charged offenses carry with them the rebuttable presumption discussed above, but they also carry significant sentences as well. Counts 1 through 3 carry maximum terms of twenty years' imprisonment each, *see* 21 U.S.C. § 841(a)(1), Count 4 carries a minimum term of thirty years' imprisonment to a maximum term of life imprisonment, *see* 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(ii), and Count 5 carries a maximum term of fifteen years' imprisonment, *see* 18 U.S.C. § 922(g)(1). These factors therefore weigh in favor of detention.

*Weight of the Evidence*

Next, the Court considers the weight of the Government's proffered evidence. *See* § 3142(g)(2). Here, the weight of that evidence appears to be strong. Specifically, the Government's evidence shows that Defendant was trafficking significant quantities of cocaine, an addictive and dangerous controlled substance. [DE 21 at 9; DE 24 (Gov. Exs. 1–5)]. This was demonstrated through an investigation using a confidential informant who, through covert photographic evidence, captured Defendant participating in two controlled-buy operations on June 20 and July 3, 2024, in which approximately 2.2 grams of field-tested cocaine was obtained

during at least one of these operations. Following the execution of a search warrant two weeks later, a sizable amount of cocaine (approximately 127.1 gross grams) was seized from Defendant's residence alongside measuring spoons, a razor blade, a digital scale, a cutting agent, and other indicia of distribution. [DE 24].

In conjunction with the drugs that were in Defendant's residence, law enforcement also located—within the same room as the trafficked drugs—a firearm with an obliterated serial number, an extended magazine containing thirty rounds of ammunition, and a machinegun conversion device. [DE 24]. Notably, the conditions of the firearm are alarming. A firearm with an obliterated serial number makes the firearm untraceable if used in a shooting, while an extended magazine allows the firearm to be discharged repeatedly without needing to reload, and a machinegun conversion device turns the firearm—in this case a normally semi-automatic Glock 19 pistol—into a fully functional automatic weapon. [*Id.*]. Drugs and loaded guns, especially when located within close proximity of one another, undoubtedly increase the risk of violence and danger to the community. *See United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008) (holding that the accessibility of a firearm, the type of weapon possessed, the status of the possession (legitimate or illegal), whether the gun was loaded, and the firearm's proximity to drugs each reasonably supports possession in furtherance of a drug trafficking operation); *United States v. Langston*, 2025 WL 2240459, at *4 (S.D. Ind. Aug. 6, 2025) (quoting *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023)) ("The loaded semiautomatic pistol suggests a readiness to use or to engage in armed confrontations, heightening the risk to law enforcement, innocent bystanders, and potential rivals or competitors in the illicit drug trade.").

*History and Characteristics*

The third factor the Court must consider is the Defendant's history and characteristics, including his physical and mental condition, family ties, employment, financial resources, criminal history, community ties, past conduct, history of substance abuse, record of court appearances, and whether at the time of his arrest Defendant was on probation, parole, or other release pending trial. *See* § 3142(g)(3).

Here, Defendant (1) is fifty-six years old and had not committed a crime since 2016; (2) successfully posted a $5,000 bond in state court in June 2024 for state charges arising from the same events as those alleged here; (3) appeared at all court hearings between June 2024 and June 2026 with the exception of one occurrence due to a miscommunication, which was later corrected;[1] (4) was not charged with any new crimes during the pendency of his current charges; (5) has not fled; (6) has remained employed at Gerresheimer Moulded Glass; (7) has a stable housing arrangement, living with his wife in the same house since 2017 and only temporarily moving to a new location due to a housefire; and (7) successfully manages his own finances. [DE 17 at 1–2; DE 22 at 4; *see also* DE 24 (presentation of same at bond hearing)].

Defendant, however, also possesses a lengthy criminal history with several prior convictions pertaining to drug possession and manufacturing. [*Id.*; DE 21 at 11; *see also* DE 11 (pretrial services report)]. Specifically, Defendant's criminal history dates back to the late 1980s. [DE 21 at 11]. In 1992, Defendant was convicted of possession of a controlled substance in Cook County, Illinois and sentenced to probation, which was later revoked in 1995. [DE 21 at 11; DE

[1] Specifically, Defendant explains that he appeared for court on the following dates: August 5, 2024; September 23, 2024; October 28, 2024; December 16, 2024; February 24, 2025; April 7, 2025; May 12, 2025; June 16, 2025; July 14, 2025; August 18, 2025; September 8, 2025; October 20, 2025; March 9, 2025; March 30, 2026; and August 10, 2026. [DE 17 at 2]. Defendant further explains that the one time he failed to appear was due to a misunderstanding, that a bench warrant was not issued, and that he appeared at the next scheduled hearing. [*Id.*].

24]. In 1998, he was again convicted of possession of a controlled substance in Cook County, Illinois and placed on probation. [DE 21 at 11; DE 24]. While his probation was terminated satisfactorily, he did incur a violation of probation while serving that term. [DE 21 at 11; DE 24]. In 2006, he was convicted of manufacture or delivery of 15-100 grams of cocaine in Cook County, Illinois, a relatively similar offense to which he is charged now and sentenced to ten years' imprisonment. [DE 21 at 11; DE 24]. And in 2016, he was convicted of manufacture or delivery of a controlled substance in Will County, Illinois, and sentenced to twenty-four months' imprisonment. [DE 21 at 11; DE 24]. As his criminal record demonstrates, a pattern of controlled substance offense violations is prevalent and the risk of reoffending or distributing drugs, particularly in conjunction with the possession of a firearm, is both concerning and weighs in favor of detention.

*Nature and Seriousness of the Danger Posed to the Community*

Lastly, the Court must consider the nature and seriousness of the danger that Defendant's release would pose to any person or the community. *See* § 3142(g)(4). Highlighting the fact that two of the offenses charged concern the possession of a firearm, particularly a machinegun, and further, that the possession was tied to drug trafficking, the nature and circumstances of the charged offenses strongly suggest that Defendant poses a danger to the community if permitted to be on pretrial release.

Therefore, in consideration of the above, the Court is persuaded that the Government has met its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *See, e.g.*, *United States v. Bond*, 2019 WL 3068292, at *4 (E.D. Wis. July 11, 2019) (finding no condition or combination of conditions would protect the public where charges included possession with intent to distribute

100 or more grams of heroin and cocaine, possession of a firearm in furtherance of drug trafficking, and being a felon in possession; and defendant had prior criminal history involving several of the same charges); *United States v. Wilder*, 2024 WL 2830793, at * 7, 10–12 (E.D. Wis. June 4, 2024) (finding government met its burden regarding danger to the community where defendant trafficked hundreds of grams of cocaine and fentanyl; possessed firearms and a machine conversion device; and had five prior convictions, with one conviction for possession of cocaine); *United States v. Annichiarico-Salazar*, 2026 WL 313185, at *3 (S.D. Ind. Feb 5, 2026) (finding government met its burden that defendant was a danger to the community where defendant was found in possession of a firearm with a machinegun conversion device). While this is sufficient to order that Defendant be detained, for the sake of completeness the Court will also review whether the Government has met its burden as to Defendant's status as a flight risk.

## II. Risk of Flight

After reviewing the entirety of evidence presented, the Government has successfully proven by a preponderance of the evidence that no condition or combination of conditions would reasonably assure Defendant's appearance in court.

*Nature and Circumstances of the Offense; Weight of the Evidence*

When considering the nature and circumstances of the charges crimes, while each of the charged crimes carry a significant maximum term of imprisonment, Count 4 of the Indictment is particularly noteworthy as it carries a thirty year minimum sentence due to the involvement of a machinegun. At the hearing, this point was especially emphasized by the Government as perhaps the biggest indication that Defendant would be a flight risk. [*See* DE 24]. When the weight of this sentence is coupled with both the application of the rebuttable presumption and the strength of the Government's evidence previously detailed, which includes photographic evidence from

two controlled-buy operations identifying Defendant and depicting the sale of cocaine, as well as the search of Defendant's residence thirteen days later uncovering large quantities of cocaine and locating a firearm in the same room as the cocaine that was being trafficked, the Court agrees that this heavily suggests an incentive to flee. [*See* DE 21 at 10; DE 24]. *See United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) (denying defendant's motion for bail and finding that where evidence was strong that defendant was a drug kingpin and defendant faced a sentence range of ten years to life, he was "the kind of person who Congress was worried would have an overwhelming temptation to flee rather than face a trial having a predictable and severely adverse outcome").

*History and Characteristics*

Defendant argues that his record of appearing in state court mitigates the risk of flight. [DE 24]. While Defendant's consistent appearance in state court for the charges arising from this event is noted, there are notable distinctions from assuring his appearance here. Defendant did not face a thirty year minimum sentence in state court. Furthermore, Defendant has had prior failures to appear, including in January 2016 in Will County, Illinois, and in February 2025 for the state case arising from these events. [DE 24]. Defendant has also engaged in criminal activity while on supervision and has previously violated the terms of his release. [*Id.*; *see* DE 11 at 11]. His prior record, therefore, suggests that Defendant could be a flight risk if permitted to be on pretrial release.

*Alternative Conditions to Detention*

Finally, Defendant argues that specific and enforceable conditions are available that should be considered prior to ordering detention. [DE 22 at 6]. Under the Bail Reform Act of 1984, the Court must consider the possibility of less restrictive alternatives to detention. *See*

*United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991). Here, Defendant proposes the following set of conditions: release to a residence investigated and approved by Pretrial Services, under home detention or another appropriate location restriction, with location monitoring if available, required approval for travel or departure for any necessary means, a prohibition on possessing firearms, and a no-contact order with the Government's confidential informant or other witnesses. [DE 22 at 6]. These conditions, however, will not suffice. First, it should be noted that Pretrial Services, in the report considered by both the magistrate judge and this Court, specifically recommended that no condition or combination of conditions would reasonably assure Defendant's appearance. Second, for the reasons expressed above concerning the weight of the Government's evidence and the significance of the potential term of imprisonment, the Court is not convinced that these conditions would overcome the incentive to flee. Finally, because Defendant has failed to appear for court in the past, and further, has engaged in criminal activity while on supervision, location monitoring, weapons bans, and no-contact orders would likely have little to no impact on Defendant.

Accordingly, the Government has proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance in court.

## CONCLUSION

For the reasons stated above and explained during the detention hearing [DE 24], the Court concludes that no condition or combination of conditions exist that would reasonably ensure Defendant's appearance or the safety of the community. Therefore, the Court **DENIES** Defendant's Motion for Reconsideration of Order of Detention [DE 17] and **ORDERS** he remain detained pending trial.

SO ORDERED.

ENTERED: November 24, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court